**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AL MUXYAH , | ) | CASE NO. 1:17-cv-00716 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Al Muxyah (hereinafter "Plaintiff"), challenges the final decision of Defendant

Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"),

denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits

("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This

court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United

States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report

and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that

the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent

with this opinion.

## I. Procedural History

On January 31, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of February 1, 2013. (Transcript ("Tr.") 232). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 178-193). Plaintiff participated in the hearing on May 11, 2016, was represented by counsel, and testified. (Tr. 106-147). A vocational expert ("VE") also participated and testified. *Id*. On November 8, 2016, the ALJ found Plaintiff not disabled. (Tr. 98). On February 13, 2017, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On April 6, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 11).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to grant appropriate weight to treating and examining physicians, (2) the ALJ erred by finding several of Plaintiff's impairments were non-severe, and (3) new and material evidence requires remand. (R. 10).

## II. Evidence

### A. Investigation of Fraudulent Reporting

Initially, in his application, Plaintiff asserted that he became disabled on February 1, 2013. (Tr. 232). During the course of the initial claim development, Plaintiff's wife/significant other reported that Plaintiff suffered from extreme memory problems, indicating that Plaintiff cannot remember to take out the trash, that Plaintiff cannot leave the house by himself or he would get lost, and that he cannot be left alone as he might leave the stove on or the doors unlocked. (Tr. 152, 462). She also indicated that Plaintiff suffers from paranoia and hallucinations. *Id*.

2

On February 18, 2014, Plaintiff presented for a mental health assessment indicating that his chief complaint was that he had been depressed. (Tr. 318, 462). Plaintiff reported increased depression for the past year, and that he stopped working as an HVAC tech in 2013 due to exhaustion and chronic hip pain. *Id*. He reported no contact with his six children, suffering auditory and visual hallucinations several times per week, and a previous diagnosis of paranoid schizophrenia. (Tr. 318-319).

On July 29, 2014, the Cleveland Cooperative Disability Investigations Unit (CDI) opened an investigation into Plaintiff's claim "as a result of an allegation of fraud or similar fault that was identified by the Ohio Disability Determination Service (DDS)." (Tr. 461). The investigation also appears to have been prompted by the inconsistencies between the above reports and "[c]ollateral medical records [that] do not demonstrate any psychological abnormalities." (Tr. 462-463).

On August 11, 2014, when CDI agents arrived at Plaintiff's home, his wife/significant other advised that Plaintiff was at work at his HVAC technician job despite statements that he had been unable to work since February 1, 2013. (Tr. 463). She telephoned him to advise him of the detectives' arrival. *Id*. Plaintiff arrived at the home driving a van, and walked with a slight limp while using a cane. (Tr. 463-464). Plaintiff told the detectives that he was working part-time for Comfort Environmental Company, and had worked there for approximately two years. (Tr. 464). Plaintiff was "polite, attentive, cooperative, articulate and personable during the interview. [He] displayed no depression, anxiety, nor did he make mention that he suffers from the aforementioned. [He] stated that he applied for disability benefits related to his degenerative hip condition only." (Tr. 465).

On September 10, 2014, based on the file and the CDI report, the State Agency concluded

that:

> There is reason to believe that the claimant and his third party knowingly
> provided incorrect information regarding his ability to function independently.
> Mr. Muxyah reported on a typical day he paces back and forth, undecided as what
> to do next. He cannot bathe himself, cannot go out alone, needs reminders for
> personal care, does not prepare meals or do any household chores, does not
> engage in any social activities, cannot pay attention long, does not follow
> instructions well, and does not handle stress well. He is hopeless, suicidal, and
> thinks someone is out to get him. At the mental health assessment in February and
> at the Psychological consultative examination he reported experiencing
> hallucinations. The claimant's third party reported his memory is bad and she
> needs to be with him all the time. He will forget to take the trash out and she
> needs to stand in front of him and make sure he takes it out. Ms. Evans stated that
> the claimant can't leave the house by himself, he would get lost. His
> hallucinations happen every day and have been going on for a few years. He is not
> able to do household chores, she needs to tell him one step at a time for
> everything that he does. The claimant cannot be trusted by himself at all. During
> the meeting with Detectives, it was discovered that Mr. Muxyah is working,
> despite him otherwise denying this elsewhere in the records. It was also
> discovered that the claimant and his wife are serving as landlords to tenants on
> their property. The claimant did not display any mental health difficulties, was out
> by himself and driving alone, and was able to interact & answer questions without
> difficulty.

> Based on the preponderance of evidence, there is reason to believe that the
> claimant knowingly concealed and provided incorrect information regarding his
> ability to function independently. The claimant has committed similar fault in
> connection with his disability claim

> EVIDENCE THAT MUST BE DISREGARDED

> In accordance with sections 205 and 1631 of the Social Security Act, it is
> appropriate to disregard the information provided by the claimant and his third
> party regarding his ability to function independently on a daily basis. Likewise,
> there is reason to believe that other information supplied by the claimant may be
> incorrect. Other reports based in full by input from the claimant should also be
> disregarded such as the Mental Health assessment of 02/18/2014 and the
> Psychological consultative examination of 08/21/2014.

(Tr. 155; *see also* Tr. 178-179, 182-183, 186, 190).

Plaintiff subsequently amended his alleged onset date to January 1, 2015 (Tr. 258).

**B. Relevant Medical Evidence**[1]

    **1.  Treatment Records Related to Physical Impairments**

Prior to his initial alleged disability onset date, an x-ray of Plaintiff's hips revealed "[m]ild degenerative changes are seen of both hips with minimal bony spurring along the superior aspects of the acefabulae, greater on the left." (Tr. 769). By comparison, an x-ray of Plaintiff's left hip taken on February 24, 2014, revealed "no acute fracture, dislocation, abnormal periosteal reaction or bone destruction. The joint space is maintained without significant arthritic changes. No definite joint effusion. No abnormal intrapelvic soft tissue mass. Visualized gas pattern is nonspecific." *Id*.

On April 17, 2014, Plaintiff underwent a consultative physical examination with Dorothy A. Bradford, M.D. (Tr. 379-87). Manual muscle testing was 5/5 (*i.e.* normal) in both the upper and lower extremities. (Tr. 380). He had normal range of motion throughout, except for his left hip. (Tr. 381-383). Dr. Bradford noted no edema or varicosities in the extremities, and that there was no misalignment, tenderness, or instability in the lower extremities. (Tr. 386). However, there was decreased range of motion at the left hip with pain. *Id*. She also noted Plaintiff had an antalgic gait, and she opined that Plaintiff had severe degenerative joint disease and should be restricted to sedentary activity. (Tr. 387). On the same date, an x-ray of the left hip showed "no fracture or bone destruction," "no arthritic changes," and "soft tissues appear normal." (Tr. 378).

Between June and August of 2014, Plaintiff attended several physical therapy sessions for his left hip. (Tr. 424-35, 450-57).

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On August 12, 2014, Plaintiff was seen by King Ogbogu, M.D., for left buttock and hip pain. (Tr. 445). Plaintiff reported little improvement with hip pain after six physical therapy sessions, but did report improvement in strength, endurance, and range of motion. *Id*. Dr. Ogbogu diagnosed mild degenerative changes of the hip and chronic pain likely from left hip osteoarthritis. (Tr.446, 449). The treatment plan included left hip steroid injections, a TENS unit, Naproxen, and physical therapy. (Tr. 449).

On September 16, 2014, Plaintiff received a steroid injection in his left hip. (Tr. 440-441).

On June 24, 2015, a nurse practitioner noted that Plaintiff had no edema and a steady gait. (Tr. 555).

On July 9, 2015, Plaintiff reported that steroid injections "helped somewhat but the pain returned." (Tr. 574). He scored 31 out of 80 on the lower extremity functional scale. (LFS). *Id*.

Between June 2015 and February 2016, medical records frequently document continued complaints of left hip pain (Tr. 543, 571, 580, 608, 616, 623, 661, 714, 755, 760, 769).

On September 3, 2015, Plaintiff complained of bilateral pain in his heels and arches with an onset two to three months earlier. (Tr. 641-44). He was diagnosed with mild bilateral plantar fasciitis; metatarsalgia, right greater than left; and, pain in limb. (Tr. 643). The podiatrist discussed conservative treatment measures, such as custom orthotics and proper shoes. *Id*.

On October 9, 2015, Plaintiff and his wife saw Kavitha Srighanthan, M.D. (Tr. 674). Plaintiff's wife indicated that she had an increased concern with Plaintiff's memory problems and depression. (Tr. 674). Plaintiff reported pain in his hips and feet with only minimal improvement from physical therapy. *Id*. Dr. Srighanthan assessed bilateral hip pain, plantar fasciitis, depression, and memory impairment with questionable pseudodementia due to depression. (Tr. 676-77).

On November 17, 2015, Plaintiff was referred to the Physical Medicine and Rehabilitation Clinic for his left hip pain. (Tr. 714-718). Dr. Ogbogu assessed chronic pain which appeared to be from left hip osteoarthritis, suggested a repeat steroid injection, and reordered physical therapy. (Tr. 718).

On December 15, 2015, Plaintiff received a left hip injection that yielded two weeks of relief. (Tr. 728-729, 769).

### 2. Treatment Records Related to Mental Impairments[2]

On April 17, 2014, consultative examiner noted Plaintiff had appropriate judgment and insight, was oriented to person, place, and time, had normal recent and remote memory, and appropriate mood and affect. (Tr. 386).

On November 15, 2015, Plaintiff was seen as a new patient in the Neurology Clinic by Lingling Rong, M.D., for his complaints of memory loss starting the previous year. (Tr. 699). He scored 18/30 on a mini-mental state examination (MMSE) with poor attention and memory. (Tr. 702). The doctor assessed a cognitive impairment of unclear etiology and ordered magnetic resonance imaging (MRI) of the brain. (Tr. 703).

On January 2, 2016, an MRI of Plaintiff's brain was "grossly normal except microvascular disease." (Tr. 709, 732, 735).

On February 3, 2016, Plaintiff returned to Dr. Rong complaining of worsening memory problems. (Tr. 731-32). He scored 10/30 on MMSE (Tr. 735). The assessment was advanced dementia and Plaintiff was prescribed Aricept. *Id*.

---

[2] The bulk of Plaintiff's mental health treatment records post-date the September 10, 2014, determination that Plaintiff "knowingly concealed and provided incorrect information" regarding mental health based limitations. (Tr. 155).

On April 21, 2016, Plaintiff underwent a tele-psychiatric evaluation with Maximo Lockward, M.D., which was continued on April 28, 2016 (Tr. 808-12, 813-17). Plaintiff and his wife reported that he had difficulty remembering things, leaves the stove on, and goes wandering outside the house. (Tr. 808). On mental status examination, Plaintiff had normal appearance, demeanor, activity, speech, and eye contact; he had logical thought process and normal thought content, but reported auditory hallucinations; had a depressed mood; exhibited a full affect with cooperative behavior; and had memory loss and poor insight and judgment. (Tr. 814-815). Plaintiff's half minute recall was 0/3, his MMSE score was 12/27, but that "other items in MMSE were not done due to evaluation being done via telepsyc[h]iatry." (Tr. 815). Dr. Lockward diagnosed major neurocognitive disorder due to possible Alzheimer's disease and major depressive disorder with psychotic features, recurrent episode. (Tr. 817).

On May 31, 2016, Plaintiff's wife told Dr. Lockward that Plaintiff had been doing "excellent," was sleeping through the night, did not hear voices anymore, was very relaxed, and that most of the time his mood was now "mild," and not anxious or significantly down. (Tr. 822). There were no reported side effects to medication. *Id*. Mental status examination was largely unchanged, though insight and judgment improved to average. (Tr. 823-24). Dr. Lockward indicated that Plaintiff was "doing much better, not reporting depressive symptoms or psychosis," but his cognitive impairment was "about the same;" his medications were continued. (Tr. 822).

On June 28, 2016, Dr. Lockward noted that Plaintiff was "still doing pretty well overall." (Tr. 825). Dr. Lockward indicated that there were no changes in his mental status since his last visit, and continued his medications. (Tr. 825-826).

On August 2, 2016, Dr. Lockward indicated Plaintiff was doing "pretty well aside from

lately having a tendency to obsess." (Tr. 828-829).

### 3.  Medical Opinions Concerning Plaintiff's Functional Limitations

On June 16, 2014, following a review of the evidence, State Agency physician Stephen Sutherland, M.D., opined that Plaintiff had no severe physical impairments. (Tr. 156-57).

On September 10, 2014, State Agency psychologist Patricia Semmelman, Ph.D., reviewed the file, found that there was insufficient evidence to evaluate the claim, and found no medically determinable mental impairments were established. (Tr. 157-58).

On November 25, 2014, State Agency physician William Bolz, M.D., reviewed the updated records and opined that Plaintiff could perform medium exertional level work with frequent postural activities and occasional climbing of ladders, ropes, and scaffolds. (Tr. 169-70). He found no evidence of a severe physical impairment, noting that the claimant was using a cane, but had normal hip x-rays. (Tr. 168).

On August 21, 2014, Plaintiff underwent a consultative psychological evaluation with David V. House, Ph.D. (Tr. 506-14). No testing was performed other than the interview with claimant. (Tr. 506). Based upon the information gathered during the interview session, Dr. House opined that Plaintiff suffered from a moderate mood disorder, moderate anxiety disorder, and polysubstance use disorder in reported remission. (Tr. 512, 514). He did not believe there was enough information to advance a diagnosis of post-traumatic stress disorder or major depressive disorder with psychotic features. *Id*. He opined that Plaintiff's memory function long-term appeared broadly intact, his short-term memory was a bit less stable; and that his ability to follow simple instructions appeared broadly intact, but that he would have some difficulty with multi-step instructions on a consistent basis. (Tr. 513). He further opined that Plaintiff's emotional resources and coping skills appeared moderately reduced. (Tr. 513).

On January 5, 2015, State Agency psychologist Janet Souder, Psy.D., reviewed the file and continued to find there was insufficient evidence to establish a medically determinable mental impairment. (Tr. 167-68).

On July 8, 2015, Dr. Srighanthan completed a checklist medical source form concerning Plaintiff's physical capacity. (Tr. 534-35). Dr. Srighanthan stated that Plaintiff had no lifting/carrying restrictions and no sitting restrictions, but indicated Plaintiff could stand/walk for only 4 hours (30 minutes without interruption) in an eight-hour workday. (Tr. 534). Dr. Srighanthan further opined that Plaintiff could rarely climb; could occasionally stoop, crouch, kneel, crawl, reach, and push/pull; and frequently balance and perform fine and gross manipulation. (Tr. 534-35). The only explanation for the standing/walking restrictions was "mild degenerative changes of the hip on x ray (L > R)." (Tr. 534). She also indicated that Plaintiff needed to alternate positions between sitting, standing, and walking at will, and experienced moderate pain that would interfere with concentration, take the person off task, and cause absenteeism. (Tr. 535). She further stated he would require five minute breaks every thirty minutes. *Id*. There was no additional explanation for these limitations. *Id*. Dr. Srighanthan noted that Plaintiff's impairment is affected by moving machinery and temperature extremes, explaining that "cold temperature will aggravate joint pain." (Tr. 535).

Also on July 8, 2015, Dr. Srighanthan completed a checklist medical source form concerning Plaintiff's mental capacity. (Tr. 532-533). Dr. Srighanthan opined that Plaintiff could perform in all categories queried up to 2/3 of a workday or more. *Id*. When asked to identify diagnosis and symptoms that support her assessment, Dr. Srighanthan wrote "N/A". (Tr. 533).

On May 3, 2016, Dr. Lockward completed a checklist medical source form concerning Plaintiff's mental capacity. (Tr. 748-49). Dr. Lockward indicated that he had been treating

Plaintiff less than one month when the form was completed. (Tr. 749). He opined that Plaintiff could rarely[3] perform any of the identified activities, except that he could occasionally maintain his appearance. *Id*. When asked to identify diagnosis and symptoms that support his assessment, Dr. Lockward stated that Plaintiff's diagnoses were major neurocognitive disorder and major depressive disorder with psychotic features. (Tr. 749).

### B. Relevant Hearing Testimony[4]

At the May 11, 2016 hearing, Plaintiff testified as follows:

- He had previous work experience as an HVAC installer. (Tr. 113-114).

- He did not report earnings in 2014 despite working because he did not receive a 1099 form. (Tr. 117).

- He could not work because of "hereditary hemoglobic" telangiectasia that would cause painful lesions on his hand that would burst and bleed profusely. His hip problems prevented him from carry things and climbing ladders, and he can hardly walk due to plantar fasciitis. (Tr. 119).

- He has constant arthritis pain in his hips that he rates around an 8 on a 10 point scale. He has received injections, but his pain was not improving. He uses a cane for balance, but it was not prescribed. (Tr. 119-120). Lidociane and Tylenol might reduce his pain to a 6 of 10 level. (Tr. 120-121).

- He can lift 20 pounds and can walk a block or block and a half before needing to stop and rest. (Tr. 121). He can stand about ten minutes before needing to sit down. He received orthotics from his podiatrist and a special shoe for his plantar fasciitis. (Tr. 122). He started experiencing problems with plantar fasciitis two months earlier. (Tr. 124).

- He has lesions from telangiectasia all over his body. (Tr. 124). They are painful and bleed. He received silver nitrate sticks that cauterize the sore and stop the bleeding. (Tr. 125).

- One of his medication causes blurry vision, but he was unsure which one. He feels less depressed with the medications. They also help "a little bit" with pain and keep his blood pressure down. (Tr. 126).

---

[3] Defined in the form as an activity that cannot be performed for any appreciable time. (Tr. 748).
[4] Plaintiff has not challenged the VE's testimony or the ALJ's reliance upon it, therefore, it is intentionally omitted.

- He has difficulty concentrating, and he stopped driving a year or two earlier because he got lost one day. (Tr. 126-127). He does not cook anymore, because he always forgot to turn off the stove. (Tr. 127). He cannot do laundry because he would put too much soap in the washing machine. (Tr. 127-128). He does not vacuum, mop, or mow the lawn, but does wash dishes. (Tr. 128, 132).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since January 1, 2015, the amended onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: mild left hip osteoarthritis (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently stoop, kneel, crouch, crawl, and climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds. Additionally, the claimant is expected to be off-task up to 10% of the workday due to physical and mental symptoms.

6. The claimant is capable of performing past relevant work as a heating, ventilation, and air conditioning (HVAC) installer and servicer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision (20 CFR 404.1520(1)).

13

(Tr. 89-97).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Weight Accorded to Opinions of Dr. Srighanthan and Dr. Bradford

In the first assignment of error, Plaintiff asserts that the ALJ failed to accord appropriate weight to the July 8, 2015 medical source statement completed by Dr. Srighanthan. (R. 10,

PageID# 896-899). The Commissioner does not dispute that Dr. Srighanthan was a treating source as defined in the regulations (R. 11, PageID# 926-930), the ALJ referred to Dr. Srighanthan as a treating source (Tr. 96), and the record contains a range of treatment notes from Dr. Srighanthan as early as 2013. (Tr. 356-363). Conversely, the Commissioner avers that the ALJ satisfied the procedural safeguards of the treating physician rule, and gave good reasons for discounting Dr. Srighanthan's opinion. (R. 11, PageID# 926-930). Plaintiff also contends the ALJ failed to ascribe appropriate weight to the opinion of Dr. Bradford, a consultative examining physician. (R. 10, PageID# 898-899).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed

15

[her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson, 378 F.3d at 544* (*quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)*); *see also Johnson v. Comm'r of Soc. Sec., 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016)* ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.) Nevertheless, where a treating physician's opinion is so "'patently deficient' that the ALJ could not possibly have credited it[,] … [an ALJ's] failure to explain his 'good reasons' for not granting controlling weight to [the] opinion is properly viewed as harmless error." *Watters v. Comm'r of Soc. Sec. Admin., 530 Fed. App'x 419, 423 (6th Cir. 2013)*; *Hernandez v. Comm'r of Soc. Sec., 644 Fed. App'x 468, 474–75 (6th Cir. 2016)* ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [medical source statement] here is 'weak evidence at best' and meets our patently deficient standard.")

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart, 192 Fed. App'x 456, 465 (6th Cir. 2006)* ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990)*). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec., 342 Fed. App'x 149, 157 (6th Cir. 2009)*. If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence."

16

*Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ found Plaintiff was capable of performing medium work. (Tr. 94). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time." Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at *6 (1983); *accord Avery v. Astrue*, No. 1:11-CV-848, 2012 WL 6861207 at *3 (S.D. Ohio Dec. 12, 2012), *report and recommendation adopted*, 2013 WL 154083 (S.D. Ohio Jan. 15, 2013). Dr. Srighanthan's opinion found Plaintiff had no lifting/carrying restrictions, and, in that regard, it is not inconsistent with the RFC for medium work. (Tr. 534). However, Dr. Srighanthan also opined that Plaintiff could only stand for four hours in an 8-hour day in 30 minute increments, could rarely climb and would be off task and be prone to absenteeism.[5] (Tr. 534-535). The ALJ addressed Dr. Srighanthan's opinion, as it related to Plaintiff's *physical* impairments, as follows:

> The undersigned also gives partial weight to the opinion of Kavitha Srighanthan, M.D. … Dr. Srighanthan's opinion about the claimant's physical limitations is partially consistent with the examination findings of Dr. Bradford and the radiographic evidence (Exs. 2F and 3F). However, **Dr. Srighanthan also appeared to rely heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported**. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the

---

[5] The form does not define climbing, nor are the "off task" and absenteeism checked boxes quantified. (Tr. 535).

> consistency of the claimant's subjective complaints. Consequently, the
> undersigned gives only partial weight to the opinions of Dr. Srighanthan.

(Tr. 96) (emphasis added).

Because Dr. Srighanthan's opined standing limitation is inherently inconsistent with the ability to perform medium exertional work, the ALJ plainly rejected it. The ALJ essentially gives only one reason for rejecting the opinion of Dr. Srighanthan—it was allegedly based on Plaintiff's subjective reports, and the ALJ found Plaintiff was not credible. The court takes no issue with the ALJ's credibility finding as Plaintiff has not challenged or identified any error in the ALJ's credibility analysis. However, the decision is largely bereft of any discussion of the factors set forth in 20 C.F.R. § 404.1527(c)(2) as applied to Dr. Srighanthan's opinion. Moreover, the statement that "Dr. Srighanthan also appeared to rely heavily on the subjective report of symptoms and limitations provided by the claimant," is entirely conclusory and unexplained. While the ALJ adequately explained why she did not find Plaintiff to be entirely credible in his reporting of his symptoms, the ALJ did not explain how she reached the conclusion that Dr. Srighanthan simply accepted Plaintiff's self-reports and did not base her opinion on her own medical judgment. In other words, the ALJ does not point to inconsistencies between Dr. Srighanthan's medical source statement and her treatment notes or otherwise articulate an explanation for her conclusion.[6] Courts routinely find that perfunctory assessments

---

[6] This report should not be construed as suggesting that Dr. Srighanthan's medical source statement should be ascribed any particular level of weight. It is admittedly contained in a checkbox format with limited explanation. (Tr. 534-35). Further, Dr. Srighanthan's treatment notes are replete with findings that neurologically Plaintiff had no weakness, numbness, or gait problems, and also had no arthritic pain, joint swelling, or muscle weakness. (Tr. 25, 63, 341, 352, 358, 401, 405, 408, 411-412, 544, 675, 695, 751). The ALJ does not discuss the treatment notes in any meaningful manner in connection with the weight ascribed to Dr. Srighanthan's opinion.

18

of treating source opinions do not constitute "good reasons" for their rejection. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source 's opinion where the ALJ merely concluded, without explanation, that the evidence of record did not support the severity of the assessed limitations); *Patterson v. Astrue*, 2010 WL 2232309 at *14 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance.") (Vecchiarelli, M.J.); *Fuston v. Comm'r of Soc. Sec.*, No. 1:11-CV-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012), *report and recommendation adopted*, 2012 WL 1831578 (S.D. Ohio May 18, 2012) ("To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion.")

The Commissioner contends that the ALJ appropriately weighed Dr. Srighanthan's opinion and relies on *Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) for the proposition that an ALJ appropriately accords little weight to treating physician's opinion where "it appeared to be based primarily on [the claimant]'s subjective complaints." (R. 11, PageID# 928). In *Keeler*, however, the ALJ did not reject a treating source opinion based solely on an unexplained conclusion that the treating source opinion was based on the claimant's subjective reports. *Id.* Instead, the ALJ gave little weight to the treating source's opinion that Keeler had no ability to lift/carry because it conflicted with the physician's own finding that "Keeler lifted with good body mechanics, it appeared to be based primarily on Keeler's subjective complaints, and it was contradicted by other evidence in the record demonstrating that Keeler was able to engage in significant physical activities, such as carrying heavy objects and doing physical work on his

19

farm." *Id.* While this court acknowledges that a physician's unquestioning reliance on a patient's subjective complaints is a valid factor to consider in deciding the amount of weight to ascribe an opinion, where it is the sole basis for rejecting an opinion, as it is here, that conclusion must be supported by some level of explanation or citation to the record. *See, e.g., Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because (1) there were substantial gaps in treatment; and (2) the doctor's assessment appeared to be based on claimant's subjective complaints *because* the limitations did not have sufficient support from objective clinical or neurological findings); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints, was inconsistent with the record as a whole, and not supported by his own treatment notes).

The Commissioner also argues that it is the ALJ's responsibility to resolve conflicts among differing medical opinions, and that the ALJ appropriately did so in this case by ascribing greater weight to the opinion of Dr. Bolz, a State Agency medical consultant who was a non-treating source. (R. 11, PageID# 926). The court rejects this line of argument. First, the ALJ did not expressly discount Dr. Srighanthan's opinion because it conflicted with or was inconsistent with Dr. Bolz's opinion. (Tr. 96). Second, even if the court were to construe the decision as implicitly rejecting Dr. Srighanthan's opinion for this reason, such an action would amount to error. The Sixth Circuit has explained that:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State Agency consultants, as "[t]o do so would turn the treating physician rule on its head.") The Commissioner's reliance on *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 274 (6th Cir. 2015) is also misplaced, as therein the ALJ did not rely on a State Agency consultant's medical opinion as a basis for rejecting a treating source's opinion.

Therefore, the court recommends finding that the ALJ erred by failing to give good reasons for rejecting the physical limitations assessed by Plaintiff's treating physician, Dr. Srighanthan. On remand, the ALJ should issue a new decision that fully explains the weight given to the treating sources.

Plaintiff also asserts error with respect to the weight ascribed to the opinion of a non-treating consultative examiner, Dr. Bradford. (R. 10, PageID# 898-899). The opinion of a non-treating but examining source is not subject to the rigors of the treating physician rule. Other courts have determined that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). Instead, an ALJ, when arriving at the RFC assessment, "must always consider and address medical

source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also* Puckett v. Colvin, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added).

Here, the ALJ clearly considered Dr. Bradford's opinion and offered the following assessment of her April 2014 opinion:

> However, the undersigned gives little weight to the opinion of Dr. Bradford. Dr. Bradford is an independent consultant and an examining source. Dr. Bradford opined that the claimant was limited to sedentary activity (Ex. 3F, p. 9). Dr. Bradford's opinion is inconsistent with her own examination findings. Her opinion is also inconsistent with the radiographic evidence and the medical record as a whole (Ex. 2F, p. 2). Therefore, the undersigned gives little weight to the opinion of Dr. Bradford.

(Tr. 19).

Plaintiff fails to develop any meaningful argument suggesting that the ALJ's decision failed to satisfy the *explanation* requirement. Instead, Plaintiff asserts that greater weight should be assessed to Dr. Bradford's opinion because it was allegedly consistent with other medical evidence, which he cites in his brief, including Dr. Srighanthan's opinion. (R. 10, PageID# 899). Because Plaintiff does not actually challenge the explanation given by the ALJ but rather advocates for ascribing more weight to Dr. Bradford's opinion based on evidence that Plaintiff feels supports the opinion, Plaintiff is essentially inviting the court to reweigh the evidence. Specifically, he asks the court to consider the cited medical evidence and to determine the ALJ

should have come to a different conclusion with respect to the weight ascribed to Dr. Bradford. However, this court's role in considering a social security appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681. Following the aforementioned precedent, this court declines to reweigh the evidence. While the ALJ's explanation with respect to Dr. Bradford was rather succinct, the explanation requirement is not as rigorous as the good reasons requirement of the treating physician rule. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). Thus, the court finds no error in the weight ascribed to Dr. Bradford's opinion.

### 2. Severe Impairments

In the second assignment of error, Plaintiff asserts that the ALJ erred at Step Two by failing to designate dementia and plantar fasciitis as severe impairments, as he alleges both conditions placed limitations upon his ability to perform basic work activities. (R. 10, PageID# 900-904). The Commissioner contends that the ALJ's Step two findings were reasonable and, moreover, irrelevant because the ALJ went beyond Step Two and considered all of Plaintiff's impairments, both severe and non-severe. (R. 11, PageID# 920-926).

As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "At step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe."

*Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…") The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

Here, the ALJ found that Plaintiff had a "severe" impairment, namely left hip osteoarthritis, and move on to the remaining steps of the sequential evaluation. (Tr. 89-98). Because an ALJ must move on to the subsequent steps in the sequential evaluation even if only one impairment is found to be "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir.2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)).

Nevertheless, after the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. " SSR 96–8p, 1996 WL 374184 at *5 (Jul. 2, 1996).

Here, with respect to Plaintiff's claim that the ALJ should have designated dementia as a

severe impairment, Plaintiff again merely points to evidence that would have supported such a determination rather than drawing attention to any flaw or error in the ALJ's analysis. (R. 10, PageID# 901-903). Again, this is tantamount to a request to reweigh the evidence that would have supported such a determination. The ALJ spends considerable time explaining why he did not find Plaintiff's allegations of dementia credible, focusing significantly on Plaintiff's lack of credibility due partially to the CDI investigation and the misrepresentations revealed in the report. (Tr. 92-93). Furthermore, despite finding that Plaintiff did not have any severe mental impairments, the ALJ plainly considered any limitations and/or restrictions imposed by Plaintiff's non-severe mental impairments. Specifically, in crafting the RFC, the ALJ found that claimant would be off-task up to 10 percent of the workday to both physical and *mental* symptoms. (Tr. 94). Therefore, the ALJ did not ignore those mental-based limitations she found credible and, again, Plaintiff has not challenged the credibility determination. Therefore, even assuming *arguendo* that the ALJ erred by failing to designate dementia as a severe impairment, any error was harmless.

Turning to Plaintiff's claim that the ALJ should have designated plantar fasciitis and metatarsalgia as severe impairments, the ALJ addressed these impairments as follows:

> The record shows the claimant was diagnosed with mild bilateral plantar fasciitis and metatarsalgia, right greater than left, in April 2016 (Ex. 13F, p. 106). The claimant is currently receiving treatment for these conditions, including physical therapy exercises, orthotics, and medication to control the pain. In follow up examinations, the claimant reported that his foot pain had improved with stretching and medication (Exs. l3F, p. 205 and 15F, p. 29). Additionally, these conditions have not yet persisted for a continuous 12-month period. Accordingly, the undersigned finds that the claimant's plantar fasciitis and metatarsalgia are non-severe.

(Tr. 90).

The Commissioner concedes that "the ALJ mistakenly identified the original diagnosis date

25

of Plaintiff's plantar fasciitis and metatarsalgia as April 2016 (which from the face of the cited medical record appears to be the date on which it was printed) as opposed to June 2015 (the actual date on which the medical encounter occurred during which the diagnosis was made). (R. 11, PageID# 925, citing Tr. 90, 643). Nevertheless, the Commissioner asserts that this mistake does not warrant a remand because: (1) the ALJ found Plaintiff's pain had improved with treatment; and (2) the ALJ considered all of Plaintiff's limitations at the remaining steps of the sequential evaluation, both severe and non-severe. (R. 11, PageID# 925). First, the finding that Plaintiff's plantar fasciitis and metatarsalgia improved with treatment is not the equivalent of a finding that it had subsided to such a degree as to have no more than a minimal effect on basic work activities such as standing/walking. Further, while an ALJ generally should consider the impact of non-severe impairments, it is unclear that an ALJ would do so if she believed the condition and any ensuing limitations had not met the twelve month durational requirement. Second, contrary to the Commissioner's assertion, the ALJ did not state that she was considering the impact of non-severe impairments when formulating the RFC.[7]  In fact, the decision explicitly refers to only a singular "impairment" when stating that the ensuing limitations were accounted for in the RFC. (Tr. 95). Finally, the portion of the decision discussing the RFC does not mention any limitations (or lack thereof) related to plantar fasciitis and metatarsalgia. (Tr. 94-97). The ALJ does note that Plaintiff was prescribed orthotics for his shoes and that he wears them most (but not all) of the time. (Tr. 95). Given the unique circumstances of this, it is unclear whether the ALJ considered all of Plaintiff's limitations, including those imposed by plantar

---

[7]  Unlike the above mental impairments that were accommodated to some extent in the RFC, the court cannot infer from the RFC that Plaintiff's plantar fasciitis and metatarsalgia were considered.

26

fasciitis and metatarsalgia. Because a remand is necessary, a new decision should clarify the limitations, if any, that result from Plaintiff's plantar fasciitis and metatarsalgia.[8]

### 3. New Evidence

In his final assignment of error, Plaintiff argues that new, material evidence exists justifying a remand for further consideration of his claim. (R. 10, PageID# 905-906). Given the recommendation that this matter be remanded for a new decision based on other assignments of error, the court declines to address this argument in the interests of judicial economy. Furthermore, the court finds that under these circumstances, the ALJ should make the determination as to whether the new evidence is material and relates back to the relevant time frame.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: May 22, 2018

---

[8] As it is unclear whether the ALJ failed to consider whether any functional limitations resulted from Plaintiff's plantar fasciitis and metatarsalgia or whether she merely did not find any additional limitations were warranted on top of those caused by Plaintiff's left hip osteoarthritis, the court declines to find whether a remand would have been appropriate on this error alone.

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986)**.